This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Norman Manges, appeals the decision of the Lorain County Court of Common Pleas, which found him guilty of receiving stolen property and sentenced him to twelve months in the Lorain County Correctional Institution. This Court affirms.
 I.
On October 23, 2000, an unknown person broke into the home of Jason Easton. Four guitars were stolen. The stolen guitars had a combined value of three thousand dollars. Easton reported the crime to the Lorain County Sheriff's Department and put up fliers at local bars and clubs around the county.
Terry Beckett saw one of the fliers at the Crossroads Tavern. A short time later, Beckett received a phone call from Jerry Horton. Horton said that he had a tenant who had some guitars for sale. The tenant was Norman Manges, aka Dominic. Manges was behind on his rent, and Horton was trying to help him sell the guitars. Horton gave Beckett Manges' name and phone number. Beckett called and inquired about the guitars that Manges had for sale. Manges' description of the four guitars he had for sale was identical to the guitars that Beckett had seen on the flier at the tavern.
Beckett called Horton and told him that he believed the guitars Manges had were stolen. Horton then contacted Manges and asked him if the guitars were stolen. Manges told Horton that the guitars were not stolen and that he had the receipts to prove it.
Beckett then contacted the Crossroads Tavern to get the name and number of the contact person on the flier. He called Easton and asked him to describe the guitars that were stolen. Easton's description matched the description that Manges had given him for the guitars he had for sale. Beckett asked Easton and his roommate, J.C., if they knew a man named Dominic. Dominic was a friend of J.C. and had been to Easton and J.C.'s apartment before. Dominic had even played one of the stolen guitars before.
Deputy Meyers of the Lorain County Sheriff's Department contacted Beckett and obtained a written statement from him detailing the events leading to his discovery that Manges had four guitars that matched the description of the guitars that were stolen from Easton's apartment. Horton and his live-in girlfriend, Paula Zimmerman, also gave written statements. Zimmerman had actually seen the guitars in Manges' apartment. Manges told Zimmerman that he got the guitars in Louisiana and was trying to sell them to pay the back rent he owed to Horton.
Deputy Meyers obtained a search warrant for Manges apartment on November 7, 2000. Manges refused to give Deputy Meyers a written statement, but he did admit that he had the four guitars. Manges told Deputy Meyers that he learned of the impending search and had moved the guitars to his "safe place." He also stated that he bought the guitars from a man named Crazy Mike. Manges told Deputy Meyers that he paid one thousand dollars for all four guitars.
A few days later, Easton contacted Manges and told him that the guitars belonged to him and that if Manges returned them, he would not press charges. On November 13, 2000, Manges returned the guitars to Easton and again stated that he had purchased them from a man named Crazy Mike for one thousand dollars. Manges was then arrested and charged with receiving stolen property.
The case was tried to a jury. The jury found Manges guilty of receiving stolen property, and Manges was sentenced to twelve months in the Lorain Correctional Institution.
Appellant timely appealed, and has set forth three assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR "The trial court erred by disregarding the mandate of R.C. 2929.14 and sentencing Appellant to the maximum term of imprisonment."
In his first assignment of error, appellant has argued that the court erred in sentencing him to the maximum term of imprisonment. This Court disagrees.
Once it has been determined that the trial court made the required findings for imposing a maximum sentence as required by R.C.2929.19(B)(2)(d), this Court's standard of review is controlled by R.C.2953.08(G)(2), requiring it to determine if the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "`which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Under R.C. 2929.14(C), a trial court may impose a maximum prison term on a defendant who has met one of four criteria: (1) the defendant committed the worst form of the offense; (2) the defendant poses the greatest likelihood of committing future crimes; (3) the defendant is a major drug offender of the type set forth in R.C. 2929.14(D)(3); or, (4) the defendant is a repeat violent offender of the type set forth in R.C.2929.14(D)(2). R.C. 2929.19(B)(2)(d) mandates that if the trial court imposes a maximum prison term allowed for an offense under R.C. 2929.14(A) the court must give its reasons for that decision.
When sentencing Manges, the trial court stated:
 "This guy has a history of recidivism, which goes on and on and on. * * * And I'm going to give you the maximum sentence here of 12 months based upon your prior record; based upon the fact that in my view there is absolutely no remorse; based on your failure to assume responsibility for this act; and based upon the history of while on parole, and the likelihood that you will, in fact, continue the pattern. I do find that this is the worst form of the offense, and that there is the greatest likelihood of committing future crimes."
In this case, the court had before it facts to establish that Manges had committed the worst form of the offense. After reviewing Manges' criminal record, the court also concluded that he posed the greatest likelihood of recidivism. The trial court stated its reasons for imposing the maximum sentence on the record during the sentencing hearing and set them forth in the judgment entry of conviction and sentencing. The record does not reveal that the trial court acted contrary to law or the record when imposing the maximum sentence.
Manges' first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "The trial court erred to the prejudice of Appellant in violation of Criminal Rule 29 Article 1 Section 10
of the Ohio Constitution and the due process clause of the [United States Constitution] when it denied Appellant's motions for acquittal."
 THIRD ASSIGNMENT OF ERROR "The trial court erred to the prejudice of Appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."
In his second and third assignments of error, Manges challenges the adequacy of the evidence presented at trial. Specifically, he avers that the State failed to present sufficient evidence to support the trial court's denial of his
Crim.R. 29 motion for acquittal and that his conviction for receiving stolen property was against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case.
As a preliminary matter, this Court notes that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy."Thompkins, 78 Ohio St.3d at 386.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
Manges was convicted of receiving stolen property in violation of R.C.2913.51(A), which provides: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
Manges admitted to having the guitars in his possession. However, Manges told several different stories as to how he obtained the guitars. Easton testified that the guitars were worth three thousand dollars. Manges testified that he purchased them for one thousand dollars. Manges testified that he bought the guitars from a crackhead named Crazy Mike.
In the case sub judice, the jury had the opportunity to observe the witnesses' testimony and weigh the credibility of the testimony; therefore, this Court must give deference to the jury's decision. SeeBerger v. Dare (1994), 99 Ohio App.3d 103, 106. Upon careful review of the testimony and evidence presented at trial, this Court holds that the jury did not act contrary to the manifest weight of the evidence in convicting Manges of receiving stolen property. Consequently, this Court concludes that Manges' assertion that the State did not produce sufficient evidence to support a conviction is also without merit.
 III.
Accordingly, Manges' second and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
SLABY, P.J., WHITMORE, J. CONCUR.